IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ROBERT EARL WOODS,           )
                             )
        Plaintiff,           )
                             )
vs.                          )        CV-00-AR-2256-M
                             )
ROBERT L. SIMMONS, ET AL.,   )
                             )
        Defendants.          )

## MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Robert Earl

Woods, alleges that his constitutional rights have been violated during his incarceration in the St.

Clair Correctional Facility in Springville, Alabama. The *pro se* complaint was filed on August 14,

2000, and the amended complaint, also filed *pro se*, was filed on September 29, 2000. Plaintiff

names as defendants Captain Robert L. Simmons, Lieutenant Charles D. Bracknell, Sergeant Royce

H. Brown, Sergeant Earl Pickett, Officer Larry E. Carnes, Officer Anthony P. Boswell, Officer Ron

England, Officer Earnest Johnson, Officer Charles Bailey, and Lieutenant Carl Sanders. Plaintiff

seeks injunctive relief and monetary damages.

On September 4, 2001, the court entered an Order for Special Report directing that copies

of the complaint and amended complaint  in this action be forwarded to each of the named

defendants and requesting that they file a special report responding to the factual allegations of the

complaint and amended complaint.  On October 18, 2001, the defendants filed their special report

attaching documents and the affidavits of the defendants. By Order of July 29, 2002, the parties were

notified that the special report filed by the defendants would be construed as a motion for summary

*30*

judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff filed three responses to the defendants' motion for summary judgement on October 23, 2001, October 31, 2001, and on August 6, 2002.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

2

Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On September 16, 1999, defendants England and Johnson conducted an institutional shakedown of G-4 dormitory (defendant Johnson's affidavit page one and defendant England's affidavit). At approximately 9:45 a.m., defendants England and Johnson entered plaintiff's cell and removed a red radio with speakers (plaintiff's complaint attached page one). The red radio with two exterior speakers was not the type sold by the prison canteen or issued by the Department of Corrections, therefore, defendant England confiscated the radio (defendant England's affidavit). The radio was placed with other items considered to be contraband (defendant Johnson's affidavit page one). After the shakedown was completed, the items were taken to the back gate (defendant Johnson's affidavit page one). Defendants England and Johnson then disposed of the radio by throwing it into a trash can (plaintiff's complaint attached page one and defendant England's affidavit). Shortly after the confiscation of the radio, plaintiff requested that he be allowed to speak with defendant Simmons about sending the radio home (plaintiff's complaint attached page one). Defendant England then

3

informed plaintiff that he and defendant Johnson had decided to throw the radio into the trash can (plaintiff's complaint attached page one). Defendant Johnson told plaintiff to talk with Warden Dees if he felt like it and to file a lawsuit (plaintiff's complaint attached page one). Plaintiff talked with Warden Dees that same day and the incident was referred to defendant Simmons for investigation (plaintiff's complaint attached page one). Defendant Simmons investigated the incident and determined that the radio had been destroyed (defendant Simmons affidavit page one). Warden Dees told plaintiff to file a complaint if he wanted to (plaintiff's complaint attached page one). Plaintiff filed a claim with the Alabama Board of Adjustment on October 27, 1999 (defendants' Exhibits K and K-1 attached to Document # 15). The claim was denied (plaintiff's second affidavit marked plaintiff's Exhibit # 13 attached to Document # 20).

Defendants Brown and Pickett received information that plaintiff, who was assigned to the kitchen, was trading stolen kitchen items such as peanut butter, gloves, and sandwiches to other inmates in exchange for their canteen items (defendant Pickett's affidavit and defendant Brown's affidavit page one). On an unspecified date in February, 2000, defendants Carnes and Boswell were ordered by defendants Pickett and Brown to shakedown a file cabinet in the kitchen store room (plaintiff's complaint attached pages one and two). As a correctional officer, defendant Boswell's duties include searching areas within the prison for contraband (defendant Boswell's affidavit). Defendants Boswell and Carnes conducted a search of the stock room area in the prison's kitchen, specifically, the file cabinets (defendant Boswell's affidavit and defendant Carnes' affidavit). During the search, defendants Boswell and Carnes found a large amount of store/canteen goods in a file cabinet and desk drawer in the kitchen (defendant Carnes' affidavit). The file cabinet belonged to plaintiff (plaintiff's complaint attached pages one and two). After plaintiff unlocked the file cabinet,

4

defendants Carnes and Boswell removed and confiscated twenty-four (24) packs of cigarettes, twenty-four (24) packs of Bugler tobacco, ten (10) packs of Van-Sugar Wafers, three (3) packs of oatmeal cakes, ten (10) packs of cookies, forty (40) packs of cheese curls, six (6) pack of chips, forty-two (42) summer sausages, ten (10) packs of cocoa mix, ten (10) packs of Kool-Aid drink mix, thirty-one (31) packs of Tang drink mix, four (4) bags of sugar, forty-eight (48) soft drinks, three (3) Honey Buns, one (1) pack of Ibuprofen, and five (5) packs of corn chips (plaintiff's complaint attached page two). The items were confiscated because inmates are not allowed to store personal goods in the kitchen area (defendant Carnes' affidavit). All items confiscated were taken to the shift commander's office along with any inmate who claimed any of the items removed from the kitchen (defendant Boswell's affidavit). The confiscated items were turned over to defendant Pickett for further disposition (defendant Carnes' affidavit). Plaintiff was escorted to the shift commander's office. Upon turning the confiscated items over to the shift supervisors, defendant Boswell continued on with other assigned duties (Boswell's affidavit). Plaintiff talked with defendants Pickett and Brown about the confiscated items and was told that if he did not possess a canteen sales receipt for the items, they would be considered contraband (plaintiff's complaint attached page two). Plaintiff contended that all of the items confiscated were his and stated that he wished to keep them (plaintiff's complaint attached page two, defendant Pickett's affidavit, and defendant Brown's affidavit page one). Plaintiff could not, however, produce any canteen or property receipts for the items (defendant Pickett's affidavit and defendant Brown's affidavit page one). Nor could plaintiff state who had issued or given him the kitchen items which were confiscated (defendant Brown's affidavit page one). Defendant Simmons found that the property confiscated was contraband and plaintiff was not allowed to keep it (plaintiff's complaint attached page two). Plaintiff's request to

be allowed to send the contraband home was denied (plaintiff's complaint attached page two). Plaintiff has filed complaints with the Alabama Board of Adjustment and in the Montgomery County Circuit Court and has appealed to the Alabama Court of Civil Appeals (plaintiff's complaint attached page three).

On August 10, 2000, plaintiff sent an affidavit to another inmate, Robert Vines, who was in lockup (segregation) (plaintiff's amended complaint page two). The affidavit contained allegations against defendants Brown and Pickett (plaintiff's amended complaint page two). Officer Bailey took the affidavit which inmate Vines had signed to defendants Brown and Pickett for review and then returned the affidavit to plaintiff on August 11, 2000 (plaintiff's amended complaint page two). During the course of his segregation law library run on August 14, 2000, defendant Bailey intercepted a letter from inmate Robert Vines to plaintiff (defendant Bailey's affidavit page one). In the letter, inmate Vines requested that plaintiff send him contraband in a law book (defendant Bailey's affidavit page one). The letter was recovered from a book that inmate Vines was returning. The book was kept in the population law library to which plaintiff has access (defendant Bailey's affidavit page two). On August 14, 2000, plaintiff was given a disciplinary for violating Rule 62, Intentionally Creating a Security, Safety or Health Hazard. Plaintiff was charged with placing contraband in a law book and sending the law book containing the contraband to inmate Robert Vines (plaintiff's amended complaint page two). Plaintiff talked with defendant Simmons about the incident on August 14, 2000. On August 21, 2000, plaintiff's disciplinary hearing was held and he was sentenced to 25 days in disciplinary segregation (plaintiff's amended complaint page two). Defendant Sanders conducted the disciplinary hearing (defendant Sanders' affidavit). Defendant Sanders had no prior knowledge of the incident nor did he have prior knowledge of the incident

6

involving the confiscation of plaintiff's radio or the confiscation of the items plaintiff had stored in the kitchen (defendant Sanders' affidavit). During the hearing, plaintiff brought these incidents to defendant Sanders' attention and defendant Sanders then advised plaintiff that the previous incidents had no merit to this incident at which time plaintiff stated: "I figured you'd ride with Simmons, I'm going to file a lawsuit anyway" (defendant Sanders' affidavit). Defendant Sanders told plaintiff that he was found guilty because inmate Vines had written a letter to plaintiff asking for tobacco and stating that he would be sending plaintiff a money order (plaintiff's amended complaint page two). Plaintiff never received the letter from inmate Vines because it was confiscated by defendant Bailey (plaintiff's amended complaint page two).

## DISCUSSION

### Confiscation of the Radio

Plaintiff claims that defendants England and Johnson denied him his right to due process of law and subjected him to cruel and unusual punishment without regard to prison regulations setting forth procedures to be used when contraband is confiscated from prisoners on September 16, 1999, when they confiscated and disposed of a radio belonging to him. It is undisputed that on September 16, 1999, defendants England and Johnson conducted an institutional shakedown of G-4 dormitory. It is further undisputed that during the search of plaintiff's cell, defendants England and Johnson discovered a red radio with two exterior speakers. The radio was not the type sold by the prison canteen or issued by the Department of Corrections, therefore, defendant England confiscated it. The radio was placed with other items considered to be contraband and then disposed of by being thrown into a trash can.

7

Denial of Due Process Claim

Plaintiff's claim that he was deprived of the radio without due process of law is due to be dismissed. It is undisputed that the radio was determined to be contraband. It is further undisputed that the radio was confiscated because it was contraband. Plaintiff does not contend that the radio was not contraband or that he should have been allowed to keep it in his cell. Clearly, prisoners are not authorized to keep contraband in their cells. In *Parratt v. Taylor*, 451 U.S. 527 (1981), the United States Supreme Court held that although the unintentional loss of a prisoner's personal property was a deprivation of property within the meaning of the Due Process Clause of the Fourteenth Amendment, the plaintiff was not deprived of property without due process where the State's postdeprivation tort remedy provided the process that was due. In the companion cases of *Daniels v. Williams*, 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986), the United States Supreme Court reconsidered the holding in *Parratt*, *supra*, that "the alleged loss, even though negligently caused, amounted to a deprivation." The Court in *Daniels*, *supra*, overruled *Parratt* to the extent that it held that mere lack of due care by a state official may deprive a person of life, liberty or property and held that "the due process clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, *supra*.

Moreover, in *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), the Supreme Court stated:

We hold that an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.

8

It is clear that the plaintiff was not deprived of property without due process of law. Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims against the state or its agents. Plaintiff did in fact file a claim with the State Board of Adjustment in connection with the confiscation and destruction of his radio. The State Board of Adjustment denied plaintiff's claim. Upon the denial of a State Board of Adjustment claim, a plaintiff may then bring an action in the courts of the state of Alabama for redress. See *Carmichael v. State Board of Adjustment*, 249 Ala. 542, 32 So.2d 216 (1947). Plaintiff states that he did in fact bring an action in the Montgomery County Circuit Court for redress. He states, however, that the action was dismissed. Plaintiff states that he appealed the dismissal of his action to the Alabama Court of Civil Appeals, but his appeal was denied. Plaintiff now argues that the post-deprivation remedies available to him were inadequate. Plaintiff's feelings are understandable, however, the fact that plaintiff was unable to prevail on his claims regarding the radio does not mean that the post-deprivation remedies available to him were inadequate. Clearly, the remedies available to plaintiff were adequate. The remedies simply did not produce the outcome desired by plaintiff. Therefore, regardless of whether the alleged deprivation was unintentional or intentional or whether or not the radio was contraband, plaintiff was not deprived of property without due process of law because he had a legal means whereby he could be heard on his claim for compensation. Defendants Johnson and England are entitled to summary judgment with respect to this claim.

Cruel and Unusual Punishment Claim

Plaintiff's claim that he was subjected to cruel and unusual punishment when his radio was confiscated as contraband is also due to be dismissed. "In order to state a Section 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual

punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights...." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983). Here, plaintiff has made no showing that the defendants were deliberately or callously indifferent to his rights. To the contrary, following the confiscation of the radio as contraband, plaintiff was advised that he could file a claim with the Alabama Board of Adjustment seeking compensation for the radio. Plaintiff states in his affidavit marked "Plaintiff's Exhibit "G"" (Document # 18) that after the radio was confiscated, defendant Johnson told him to talk with Warden Dees and to file a lawsuit if he wished. He states further in the affidavit that Warden Dees also told him to file a lawsuit. It is clear that the defendants were not deliberately or callously indifferent to plaintiff's rights, but instead advised him on how he could proceed in his effort to seek compensation. The court notes further that it does not appear that plaintiff's radio was singled out for confiscation and destruction. It is undisputed that plaintiff's radio was not the only property which was confiscated and placed in the trash can during the September 16, 1999 shakedown of G-4 dormitory. Defendants Johnson and England are entitled to summary judgment on plaintiff's claim that he was subjected to cruel and unusual punishment when his radio was confiscated and destroyed during the shakedown of his dormitory on September 16, 1999.

Violation of Prison Regulations Claim

Plaintiff claims that defendants England and Johnson violated prison regulations in connection with the confiscation and destruction of the radio. More specifically, plaintiff claims that defendants England and Johnson denied him his right to due process of law and subjected him to cruel and unusual punishment without regard to prison regulations setting forth procedures to be followed when an inmate's property is confiscated as contraband. Plaintiff contends that in accord

with Alabama Department of Corrections Administrative Regulation Number 306, Disposal of Contraband, he should have been allowed 30 days within which to send the radio home before it could be disposed of by the defendants.

Even an allegation that the defendants failed to follow an agency rule or a routine procedure does not elevate this claim to one of constitutional proportion. The mere fact that regulations or procedures have been violated does not **by itself** raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981). *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996)(holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); and *Brown v. Texas A & M University*, 804 F.2d 327, 335 (5th Cir.1986)(holding that a state agency's violations of its own internal regulations did not give rise to a constitutional claim). Plaintiff claims only that the defendants failed to follow Alabama Department of Corrections' regulation or policy in connection with the disposal of the radio. He does not contend that he had a constitutional right to possess the property which was determined to be contraband or that he had a constitutional right to be allowed thirty days to send the radio home before it could be disposed of by the defendants. Nor has he directed the court to any provision of the United States Constitution or other law of the United States which mandates that prison officials must not violate their own regulations. Thus, plaintiff's claim that defendants England and Johnson violated his constitutional rights when they failed to follow prison regulations or procedures by allowing him thirty days to send the radio home prior to destroying it is due to be dismissed and defendants England and Johnson are entitled to summary judgment on this claim.

11

## Confiscation of Store Items

Plaintiff claims that on an unspecified date in February, 2000, he was deprived of store items which he kept locked in a file cabinet in the kitchen store room. Plaintiff claims that defendants Pickett and Brown ordered defendants Carnes and Boswell to shakedown a file cabinet in the kitchen store room. Although there is a discrepancy as to the actual date of the shakedown, it is undisputed that defendants Boswell and Carnes conducted a search of the stock room area in the prison's kitchen, specifically, the file cabinets. It is also undisputed that during the search, defendants Boswell and Carnes found a large amount of store/canteen goods in a file cabinet and desk drawer in the kitchen. The file cabinet was assigned to plaintiff. Defendant Carnes states in his sworn affidavit that the items were confiscated because inmates are not allowed to store personal goods in the kitchen area. All of the items confiscated were taken to the shift commander's office along with any inmate who claimed any of the items. The confiscated items were turned over to defendant Pickett for further disposition. Since plaintiff contended that all of the items confiscated were his and stated that he wished to keep them, he was escorted to the shift commander's office. Plaintiff talked with defendants Pickett and Brown about the confiscated items and was told that if he did not possess a canteen sales receipt for the items, they would be considered contraband. Plaintiff could not produce any canteen or property receipts for the items. Nor could plaintiff state who had issued or given him the kitchen items which were confiscated. Defendant Simmons found that the property confiscated was contraband and that plaintiff would not be allowed to keep it. Plaintiff's request to be allowed to send the contraband home pursuant to Alabama Department of Corrections Administrative Regulation Number 306, Disposal of Contraband, was denied. Plaintiff states that he has filed complaints with the Alabama Board of Adjustment and in the Montgomery County

12

Circuit Court and that he has appealed to the Alabama Court of Civil Appeals. Plaintiff claims further that in the days following the confiscation of the store items, defendant Bracknell and the other defendants were seen sitting back eating summer sausages and chips and making fun about confiscating the writ writer's food items and that "[s]ome of the defendants [were] issuing [his] confiscated contraband to other inmates who work for them and their informers". Plaintiff claims that defendant Carnes' told him that he gave one pack of tobacco to another inmate because the inmate had nothing and that defendant Pickett said that it was okay. Defendant Bracknell denies plaintiff's allegations. Defendant Carnes denies giving any of the confiscated property to anyone and denies telling plaintiff that he had done so. Defendant Pickens denies any knowledge of defendant Carnes giving another inmate a pack of tobacco that was confiscated from plaintiff and states that all of the contraband was destroyed.

Denial of Due Process Claim

Plaintiff's claim that he was deprived of his store items without due process of law is due to be dismissed. It is undisputed that plaintiff was given the opportunity to reclaim the store items prior to the items being declared contraband. Plaintiff states in his complaint that defendants Pickett and Brown both told him that if he did not possess a canteen sales receipt for the items confiscated, they would be considered contraband as to him. Plaintiff states in a sworn affidavit (plaintiff's Exhibit G page two Document # 18), that he does not keep receipts. He states further in that same affidavit on page three that defendant Pickett found two old canteen sales receipts which had plaintiff's name on them and gave him back some of the store items, twenty-five (25) packs of Tang drink mix, eight (8) summer sausages, and one (1) Honey Bun. It is clear from the undisputed evidence that had plaintiff been able to prove that the store items were his by providing a sales receipt for them, he

13

would have been allowed to keep the property. It is undisputed that he was allowed to keep the property for which there were receipts. The remaining property was deemed contraband and was confiscated.

Further, plaintiff has not been deprived of the store items without due process because he has a legal means whereby he can be heard on his claim for compensation and he has in fact taken advantage of that legal means. As noted above, Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims of this nature against the state or its agents. Plaintiff states in both his complaint and in his sworn affidavit (plaintiff's Exhibit G Document # 18) that he has filed several claims with the Board of Adjustment and that he has filed actions in the state courts of Alabama. Clearly, plaintiff has not been denied due process in connection with the confiscation of the store items. Plaintiff contends that the post-deprivation remedies available to him were inadequate. As previously noted, plaintiff's feelings are understandable, however, the fact that plaintiff was unable to prevail on his claims regarding the store items does not mean that the post-deprivation remedies available to him were inadequate. The remedies simply did not produce plaintiff's desired outcome. Therefore, regardless of whether the alleged deprivation was unintentional or intentional or whether or not the store items were contraband, plaintiff has not been deprived of property without due process of law because he has a legal means whereby he can be heard on this claim for compensation. The defendants are entitled to summary judgment on this claim.

Violation of Prison Regulations Claim

Plaintiff claims further that the defendants did not comply with Alabama Department of Corrections Administrative Regulation Number 306, Disposal of Contraband, when they declared

14

his store items contraband. Plaintiff states that, in accord with the regulation, the defendants should have given him thirty days within which to send the store items home and that if he could not send them home, the defendants were required to either destroy the items or donate them to a charitable organization. Plaintiff claims that instead of acting in accord with Administrative Regulation 306, defendant Bracknell and "other defendants" ate the summer sausages and chips and that "some of the defendants" issued the confiscated contraband to other inmates who work for them and to their informers. He claims that defendant Carnes told him that he had given another inmate some tobacco from the confiscated property because the other inmate had nothing and that defendant Pickens had told defendant Carnes that it was okay. In his sworn affidavit, defendant Carnes denies giving any of the confiscated items to anyone and denies telling plaintiff that he did. Defendant Carnes states further that he never saw the goods again after they were turned over to the shift commander's office. Defendant Pickens states in his sworn affidavit that the contraband was destroyed and further denies any knowledge of defendant Carnes giving another inmate tobacco from the confiscated property. Defendant Bracknell denies plaintiff's allegations against him in his sworn affidavit. The court notes that plaintiff himself has submitted evidence which states that food items confiscated as contraband can be integrated into institutional inventory (plaintiff's Exhibit B-1 attached to his complaint Document # 1).

Plaintiff's claim is due to be dismissed. Even plaintiff's allegation that the defendants failed to follow an agency rule or a routine procedure does not elevate this claim to one of constitutional proportion. The mere fact that regulations or procedures have been violated does not **by itself** raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981). *See Myers v.*

15

*Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996)(holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); and *Brown v. Texas A & M University*, 804 F.2d 327, 335 (5th Cir.1986)(holding that a state agency's violations of its own internal regulations did not give rise to a constitutional claim). Plaintiff has not directed the court to any provision of the United States Constitution or other law of the United States which mandates that prison officials must not violate their own regulations. In addition, although there is a dispute as to how the items confiscated from plaintiff were disposed of, the fact remains that the store items had been determined to be contraband because plaintiff could not produce receipts for the items and, therefore, plaintiff was not entitled to possess the store items. Therefore, it does not matter how the items were disposed of since he could not possess them anyway. Thus, plaintiff's claim that defendants Pickett, Boswell, Brown, Carnes, Bracknell, and Simmons violated his constitutional rights when they failed to follow prison regulations by allowing him thirty days to send the store items home prior to disposing of them and when they failed to either destroy the store items or donate them to a charity as provided in Administrative Regulation Number 306 is due to be dismissed and the defendants are entitled to summary judgment on the claim.

<u>Retaliation Claims</u>

Plaintiff claims that his radio and store items were confiscated in retaliation for him being a writ writer and because he assists other inmates in filing complaints against the prison officials at St. Clair Correctional Facility. Plaintiff also claims that defendants Bailey and Sanders retaliated against him for filing lawsuits against the other defendants. Plaintiff claims that on August 10, 2000, he sent an affidavit to inmate Robert Vines who was in lockup (segregation). He states that the

16

affidavit "was against defendants Sgt. Brown and Sgt. Pickett". Plaintiff states that after inmate Vines signed the affidavit, defendant Bailey took it to defendants Brown and Pickett for review. He states that the affidavit was returned to him on August 11, 2000. Plaintiff states that on August 14, 2000, he received a disciplinary in which he was charged with placing contraband into a law book and sending it to inmate Vines.

It is well settled that "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). It has been recognized, however, "that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Consequently, "[c]laims alleging retaliation must be factual and mere conclusory allegations of unconstitutional retaliation will not suffice." *Adams v. James*, 797 F. Supp. 940, 947 (M.D. Fla.). "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). *See also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Geder v. Godinez*, 875 F. Supp. 1334, 1338 (N.D. Ill. 1995).

Within this "chronology of events," a plaintiff must (1) "show that his conduct was constitutionally protected" and (2) demonstrate that his conduct in exercising a protected right was a "motivating factor" behind defendants' actions against him. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Once plaintiff has established these two elements, the

burden shifts to defendants to show by a preponderance of the evidence that the same action would have been taken had plaintiff not engaged in the protected activity. *Id.*

It appears from plaintiff's complaint and amended complaint that he is asserting that his radio and store items were confiscated and that he was found guilty of Intentionally Creating a Security, Safety or Health Hazard in retaliation for exercising his First Amendment right to access the courts. Clearly, plaintiff's right to access the courts is constitutionally protected.

The court looks first to plaintiff's claims regarding the confiscation of his radio. Plaintiff asserts in his complaint that the radio was confiscated because he is a writ writer and because he assists other inmates in filing complaints against prison officials. Plaintiff has failed to set forth a "chronology of events" from which retaliation may be inferred. Defendant Johnson states in his sworn affidavit that he and defendant England were conducting an institutional shakedown of G-4 dormitory when they found a radio with two exterior speakers in plaintiff's cell. Defendant England states in his sworn affidavit that while involved in an institutional shake down of G-4 dormitory, he and defendant Johnson entered plaintiff's cell and uncovered a red radio with two exterior speakers. He states further in his affidavit that the radio was not of a type sold in the prison canteen or issued by the Department of Corrections, therefore, he confiscated it. The plaintiff has presented no evidence that the shakedown was anything more than a routine action. It is clear that plaintiff was not singled out for shakedown because according to the affidavit of defendant Johnson, he and defendant England placed plaintiff's radio with other items which were confiscated during the shakedown and deemed contraband. Plaintiff has not disputed this statement nor does he contend that the radio was not contraband subject to confiscation. Plaintiff does not claim that during the shakedown, legal papers were removed or destroyed, that he was abused during the search, or that

18

his cell was left in disarray after the search. Plaintiff has failed to put forth any evidence to show that the shakedown and confiscation of the radio as contraband were done with a retaliatory motive. Plaintiff has failed to demonstrate that his being a writ writer and assisting other inmates with filing lawsuits against prison officials was a motivating factor behind the confiscation of his radio. Plaintiff's statements are mere conclusions and fail to establish a prima facie case of retaliation against the defendants. Defendants England and Johnson are therefore entitled to summary judgment on this claim of retaliation. *See Benson v. Cady*, 761 F.2d at 342; *Adams v. James*, 797 F. Supp. at 947. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).

With respect to the store items, plaintiff asserts in his complaint that defendants Carnes, Boswell, Brown, Pickett, Bracknell, and Simmons confiscated his store items because he is a writ writer and because he assists other inmates in filing complaints against prison officials. Plaintiff has again failed to set forth a "chronology of events" from which retaliation may be inferred. In his sworn affidavit defendant Carnes states that he did conduct a search of the stock room area of the kitchen and that during the search, he and defendant Boswell found a large amount of store/canteen goods in a file cabinet and desk drawer in the kitchen. Defendant Carnes states further that the items were confiscated because inmates are not allowed to store personal goods in the kitchen area. Defendant Boswell states in his sworn affidavit that it is part of his duty to search areas within the facility for contraband. He states that he did conduct a search in the kitchen, specifically file cabinets, and that he did confiscate items that were contraband and items that were not permitted to be stored in the kitchen such as personal items. Defendant Brown states in his sworn affidavit that the search about which plaintiff complains was ordered as a result of an earlier search by correctional officers

19

assigned to the third shift. According to defendant Brown, the earlier search had detected a lot of canteen items inside cabinet drawers in the kitchen. The search of the file cabinets assigned to the kitchen was prompted by the earlier search of the cabinet drawers in the kitchen. The plaintiff has presented no evidence to dispute the defendants' claim that the search of the file cabinets was a result of the earlier search of the cabinet drawers. It is clear that plaintiff's file cabinet was not singled out for search because according to the undisputed statement of defendant Brown, all of the file cabinets assigned to the kitchen were searched. As with his previous claim, plaintiff does not claim that during the search of the file cabinet, legal papers were removed or destroyed, that he was abused during the search, or that his file cabinet was left in disarray after the search. Plaintiff has failed to put forth any evidence to show that the search and confiscation of the store items as contraband were done with a retaliatory motive. Plaintiff has failed to demonstrate that the fact that he is a writ writer and that he assists other inmates in filing lawsuits against prison officials was a motivating factor behind the defendants search of the file cabinets in the kitchen and the confiscation of his store items as contraband. Plaintiff's statements are mere conclusions and fail to establish a prima facie case of retaliation against the defendants. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Inasmuch as plaintiff has failed to dispute with specific facts, the statements in the defendants' affidavits, defendants Carnes, Boswell, Brown, Pickett, Bracknell, and Simmons are entitled to summary judgment on this claim.

The court now considers plaintiff's claim that defendants Bailey and Sanders retaliated against him for filing lawsuits against the other defendants. Plaintiff contends that the disciplinary written by defendant Bailey on August 14, 2000, charging him with violating Rule 62, Intentionally

Creating a Security, Safety or Health Hazard, was written in retaliation for his having filed lawsuits against the other defendants. Plaintiff asserts that defendant Bailey knew about the lawsuits against the other defendants because plaintiff had sent an affidavit to another inmate, Robert Vines, by defendant Bailey on August 10, 2000. Plaintiff states that the affidavit contained allegations against defendants Brown and Pickett. In response to plaintiff's claims, defendant Bailey states in his sworn affidavit that during the course of his segregation law library run on August 14, 2000, he intercepted a letter from inmate Robert Vines to plaintiff. In the letter, inmate Vines requested that plaintiff send him contraband in a law book. The letter was recovered from a book that inmate Vines was returning. The book was kept in the population law library to which plaintiff has access. Defendant Bailey states that this action created a security, safety, and health hazard.

Plaintiff claims that defendant Sanders found him guilty of violating Rule 62, Intentionally Creating a Security, Safety or Health Hazard, on August 21, 2000, in retaliation for plaintiff having filed lawsuits against the other defendants. Defendant Sanders states in his sworn affidavit that when he conducted the disciplinary hearing, he had no prior knowledge of the incident nor did he have prior knowledge of the incidents involving the confiscation of plaintiff's radio or the confiscation of the items plaintiff had stored in the kitchen. Defendant Sanders states that during the hearing, plaintiff brought these incidents to his attention and he then advised plaintiff that the previous incidents had no merit to this incident at which time plaintiff stated: "I figured you'd ride with Simmons, I'm going to file a lawsuit anyway".

Plaintiff's claims of retaliation against defendants Bailey and Sanders are due to be dismissed. As with his other claims of retaliation, plaintiff has again failed to set forth a "chronology of events" from which retaliation may be inferred. As previously noted, within this "chronology of

21

477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Defendants Bailey and Sanders are entitled to summary judgment.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendants Robert L. Simmons, Charles D. Bracknell, Royce H. Brown, Earl Pickett, Larry E. Carnes, Anthony P. Boswell, Ron England, Earnest Johnson, Charles Bailey, and Carl Sanders are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Robert L. Simmons, Charles D. Bracknell, Royce H. Brown, Earl Pickett, Larry E. Carnes, Anthony P. Boswell, Ron England, Earnest Johnson, Charles Bailey, and Carl Sanders' motion for summary judgment is due to be GRANTED and this action against defendants Robert L. Simmons, Charles D. Bracknell, Royce H. Brown, Earl Pickett, Larry E. Carnes, Anthony P. Boswell, Ron England, Earnest Johnson, Charles Bailey, and Carl Sanders DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 26ᵗʰ day of ___September___, 2002.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

23

events," a plaintiff must (1) "show that his conduct was constitutionally protected" and (2) demonstrate that his conduct in exercising a protected right was a "motivating factor" behind defendants' actions against him. While it is clear that plaintiff has a First Amendment right to access the courts by filing lawsuits, plaintiff has failed to demonstrate that his conduct in exercising his right to file lawsuits was a motivating factor behind the defendants' actions against him. While it is undisputed that defendant Bailey knew about the affidavit which plaintiff sent to inmate Vines indicating that plaintiff had filed a lawsuit against other defendants, it is also undisputed that inmate Vines did write a letter to plaintiff which clearly indicated that plaintiff and inmate Vines had been corresponding through letters placed in law books about opening an inmate store within the prison. Inmate Vines states in the letter to plaintiff (defendants' Exhibit O Document # 15) that he needs a cell number and the name of a person on plaintiff's funds list so that he can have someone send plaintiff $25.00 "to make store with". The letter instructs plaintiff to send inmate Vines two more book names which indicates that plaintiff had sent inmate Vines book names before. Inmate Vines states that he will use the two book names that he already has (indicating that book names had been sent on a prior occasion) and that he will use the new book names later. Clearly, defendant Bailey had to give plaintiff a disciplinary in connection with this incident. Plaintiff has failed to put forth any evidence to show that the disciplinary was given with a retaliatory motive. With respect to defendant Sanders, plaintiff has failed to even allege that defendant Sanders was aware of the lawsuits filed against the other defendants. Plaintiff has failed to provide the court with any evidence to show that there was a retaliatory motive behind defendant Sanders' finding of guilt in connection with the disciplinary.  Plaintiff's statements are mere conclusions and fail to establish a prima facie case of retaliation against defendants Bailey and Sanders. *See generally Celotex Corp. v. Catrett*,